**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Robert L. Montgomery, et ux.,           )
                                        )
                    Plaintiffs,         )      No. CV-06-2955-PCT-PGR
        vs.                             )
                                        )
Kingman Airport Authority, et al.,      )      OPINION and ORDER
                                        )
                    Defendants.         )
                                        )

        Pending before the court is Defendant Kingman Airport Authority, Inc.'s Rule 56(D) [sic] Motion for Partial Summary Judgment on Counts 1 Thru 3 (doc. #8), wherein it argues that the federal claims of the Verified Complaint are barred by the applicable statute of limitations, and Plaintiffs' Motion to Strike [Defendant Kingman Airport Authority, Inc.'s Supplement to Rule 56(d) Motion for Partial Summary Judgment on Counts 1 Thru 3] (doc. #19).  Having considered the parties' memoranda in light of the evidence of record, the court finds that both motions should be granted.[1]

---

[1]     The court has considered the parties' exhibits in deciding the motion for partial summary judgment, notwithstanding the parties' improper failure to authenticate the exhibits, because neither side has objected to any of the exhibits on that basis.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 n.5 (9th Cir. 2002).

I.      **Factual and Procedural Background**

Defendant Kingman Airport Authority, Inc. ("KAA") is a not-for-profit corporation that leases the Kingman Airport ("Airport") and Industrial Park from the City of Kingman for management purposes.  The Industrial Park is adjacent to, but not part of, the Kingman Airport.  In 1984, plaintiff Robert L. Montgomery ("Montgomery") purchased property located in the Industrial Park.[2]

The Airport property includes a dedicated taxiway between the Industrial Park and the Airport's airstrip ("Airstrip").  KAA charges Industrial Park property owners and tenants for access to the Airstrip through the taxiway if the operations conducted on Industrial Park property provide aeronautical related services to the public.  KAA never has charged any Industrial Park property owner or tenant for access to the Airstrip if it is not related to providing off-airfield aeronautical services to the public.

On July 19, 1993, KAA notified Montgomery it had learned that Montgomery was offering aeronautical related services, including aircraft storage, and requested that he immediately cease all such operations on Industrial Park property.  (Doc. #9, Exh. C.)  KAA stated that it intended to deny Montgomery's operation any further access to the Airstrip from the Industrial Park until a written agreement had been negotiated and executed by Montgomery and KAA and reviewed by the Federal Aviation Administration ("FAA").   KAA enclosed a copy

---

[2]

In 1984, plaintiff Robert Montgomery and his wife Mary Ellen Montgomery purchased the property, and both were named as plaintiffs in a 1993 lawsuit against KAA.  Mary Ellen Montgomery subsequently died, Mr. Montgomery remarried, and his current wife Sandra Montgomery is named as a co-plaintiff in the current litigation.  Neither party asserts material facts involving either Mary Ellen or Sandra.

of an FAA order, which KAA said discouraged operations such as Montgomery's, and stated that it had notified the FAA of Montgomery's nonconforming operations.  KAA expressed concern that, by competing directly with operations on Airport property, Montgomery's operations may impair the Airport's ability to recover the cost of providing and maintaining a public landing area.

In 1994, Montgomery filed a lawsuit against KAA in Mohave County Superior Court seeking declaratory judgment and damages.  In his complaint filed January 10, 1994, and disclosure statement verified April 19, 1994, Montgomery alleged that in July 1993 KAA denied him access from his property in the Industrial Park to the immediately adjacent Airport operation's area.  Montgomery further alleged that KAA later permitted him access but asserted that it could regulate or restrict Montgomery's access in the future.  (Doc. # 9, Exhs. D & E.) Montgomery expressly pled that "as a further direct and proximate result of Defendant's actions and threatened actions, Plaintiffs' property has been diminished in value, all to Plaintiffs' damage."  (Doc. #9, Exh. D.)

At some point, KAA installed a remote-controlled electronic gate, which limits access across the taxiway.[3]  According to Montgomery, KAA first restricted his access to the Airstrip in 1993 when it installed a remote-controlled gate, and it refused to provide him with "a remote" unless he signed an agreement that

---

[3]

Montgomery's response to the motion for partial summary judgment states that the gate was installed in 1994.  (Doc. #12, p. 2, citing Doc. #13, ¶ 8.) His statement of facts states that the gate was installed in 1984 (Doc. #13, ¶ 8) and references his affidavit, which states that the gate was installed in 1993 (Doc. #13, Exh. A, ¶ 5).  KAA did not object to any of the dates, but its July 1993 demand letter suggests the gate had not yet been installed.  (Doc. #9, Exh. C.) Montgomery's April 19, 1994 disclosure statement does not mention the gate. (Doc. #9, Exh. E.)

restricted his access to the Airstrip.  (Doc. #13, Exh. A, ¶ 5.)  His affidavit states that the purpose of his 1994 lawsuit was to retain his "right to unfettered and unrestricted access to the airstrip" for himself and his tenants.  (*Id.* at ¶ 6.)  Montgomery's affidavit further states:

> 8.      During the pendency of said lawsuit, I was contacted by Richard H. "Mac" McDaniels, at that time the Airport Manager, who came to my property.  Mr. McDaniels gave me a remote control to open the gate that was restricting my access to the airstrip.  He stated that the Airport Authority no longer wished to spend money on lawyers to litigate the issues involved in the lawsuit, and would not require me to sign an agreement limiting my access to the airstrip.
>
> 9.      After that meeting with Mr. McDaniels, I was once again able to access the airstrip, as were each and all of my tenants who used my property in connection with their businesses.  In my opinion, I had obtained the primary relief I sought in the lawsuit at that time.
>
> ....
>
> 12.     From the time that Mr. McDaniels provided me with the aforementioned remote control, in 1995, until some time in 2005, my tenants and I have had unrestricted and unfettered access to the airstrip through the aforementioned gate.

(Doc. #13, Exh. A.)  According to McDaniels' death certificate, however, he died on April 17, 1994.  (Doc. #17, Exh. A.)

In 1995, both parties moved for summary judgment, and Montgomery argued that the case was ripe for adjudication because KAA reserved the right to regulate and restrict Montgomery's access to the Airstrip in the future. The Superior Court denied both parties' motions on September 22, 1995, because the parties were unable to agree on the chronology of events leading to the establishment of the lease, the right of way, and the FAA requirements for airport operation.  The Superior Court also commented that pursuing further litigation without the FAA's direction would be fruitless.  On October 2, 1996, the Superior

- 4 -

Court dismissed the case without prejudice for lack of prosecution.  On October 4, 1996, Montgomery moved to continue on the Superior Court's inactive calendar because the parties were "attempting to reach an amicable settlement" of the case.  (Doc. #9, Exh. H.)

Between 1984 and 2005, various tenants leased portions of Montgomery's property and accessed the Airstrip for commercial purposes, but no evidence in the record establishes whether the tenants operated "off-airfield aeronautical related services to the public."  During that time, Montgomery was not aware of any KAA policy to charge Industrial Park property owners or tenants operating "off-airfield aeronautical related services to the public" for access to the Airstrip across the taxiway.  After Montgomery received a remote control to open the gate to access the Airstrip, he and all of his tenants were able to access the Airstrip freely.

In 2005, KAA notified Montgomery's tenant that operates a flight school that it would be denied further access to the Airstrip unless it executed an agreement with KAA and paid certain fees.  After learning of KAA's decision to restrict access to the Airstrip from his property, Montgomery initiated the present lawsuit by filing his complaint on December 8, 2006.  Montgomery's verified complaint alleges that he and his tenants enjoyed unrestricted access to and from the Airstrip through the remote entry gate until KAA required the flight school to sign a license agreement and pay certain fees, that other similarly situated property owners are not being required to comply with similar restrictions, and that the "repeated attempts to eliminate Plaintiffs' right to unfettered and unrestricted access to the Airstrip have impaired, and will continue to impair, the value of the Property."  (Doc. #1, ¶¶ 24, 27, 28.)  Montgomery also alleges that

KAA's actions to limit his access to the Airstrip constitute an unconstitutional taking of his property because the actions diminish its value and burden his interest in the property without due process of law and without just compensation. (*Id.* at ¶ 33.)  Montgomery does not allege that he has been injured by KAA executing a license agreement with his flight school tenant.

## II.    Legal Standard and Analysis

The court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must produce evidence and persuade the court there is no genuine issue of material fact.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

In this context, the court presumes the nonmoving party's evidence is true and draws all inferences from the evidence in the light most favorable to the non-moving party.  *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).  If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence, but rather submits the issue to the trier of fact for resolution. *Id.*  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested

1    witnesses.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 1551,

2    120 S. Ct. 2097, 2110 (2000).

3         Where the record, taken as a whole, could not lead a rational trier of fact to

4    find for the nonmoving party, there is no genuine issue of material fact for trial.

5    *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356.

6         **A.    KAA's Supplement to Its Motion for Partial Summary Judgment
          Is Not Relevant and Was Filed Without Leave.**

7

8         After the briefing on its motion for partial summary judgment was complete,

9    KAA filed a supplement without seeking leave to file it.  (Doc. #18.)  *See Leong v.*

10   *Potter*, 347 F.3d 1117, 1125 (9th Cir. 2003) (district court did not abuse its

11   discretion by striking supplemental brief filed without leave of court).  The

12   supplement includes as an exhibit findings of fact and conclusions of law from a

13   Superior Court case in which Montgomery was not a party.  Montgomery moved

14   to strike the supplement as irrelevant and inadmissible hearsay.  (Doc. #19.)  The

15   court agrees. Another court's findings based on evidence not  before this court

16   and to which Montgomery had no opportunity to respond have no relevance here.

17    *See Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (the

18   court may consider only admissible evidence in ruling on a motion for summary

19   judgment).

20        **B.    Arizona's Two-Year Statute of Limitations Applies to Counts 1
          Thru 3.**

21

22        Because 42 U.S.C. § 1983 does not contain its own statute of limitations,

23   federal courts borrow the statute of limitations applicable to personal injury claims

24   in the forum state, and Arizona's limitation period for personal injury claims is two

25   years. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004); *see*

26

                                   - 7 -

A.R.S. § 12-542.  Under federal law, the claim accrues when the plaintiff knows or has reason to know of the injury from which the claim arises.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

In § 1983 actions, where federal courts borrow the state statute of limitations, the courts also borrow the forum state's tolling rules.  *Id., at* 992. Under Arizona law, wrongful concealment generally will toll the statute of limitations, but proving wrongful concealment requires evidence of a positive act to conceal a wrong.  *Mohave Elec. Co-op, Inc. v. Byers*, 189 Ariz. 292, 310, 942 P.2d 451, 469 (App. 1997).

Arizona courts recognize estoppel by inducement as an equitable exception to application of a statute of limitations, which applies when necessary to prevent injustice.  *Nolde v. Frankie*, 192 Ariz. 276, 279, 964 P.2d 477, 480 (1998).  To benefit from estoppel by inducement, the plaintiff must establish that (1) the defendant made *specific* promises, threats, or inducements that prevented the plaintiff from filing suit, (2) the defendant's promises, threats, or inducements *actually* induced the plaintiff to forbear filing suit, (3) the defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action, and (4) the plaintiff filed suit within a reasonable time after termination of the conduct warranting estoppel.  *Id.,* 964 P.2d at 481.

**C.    There Is No Genuine Issue of Material Fact Relevant to KAA's Statute of Limitations Defense, and Counts 1 Thru 3 Are Barred by the Statute of Limitations as a Matter of Law.**

To determine whether Counts One through Three of Montgomery's Verified Complaint are barred by the two-year statute of limitations, the court must determine when Montgomery first knew or had reason to know of the injury from which the counts arise.  Count One alleges that Montgomery possesses a

property right to unrestricted access to the Airstrip, and that KAA's actions limiting access to the Airstrip constitute an unconstitutional taking.  Count Two alleges that KAA denied Montgomery's constitutionally protected right to due process of law by denying him notice and an opportunity to be heard regarding KAA's attempts to charge Montgomery and his tenants a fee for accessing the Airstrip. Count Three alleges that KAA violated Montgomery's constitutional right to equal protection by requiring him and his tenants to pay a fee to access the Airstrip and not requiring other similarly situated persons to pay a fee.  Count Three further alleges that KAA's actions toward Montgomery were and continue to be "motivated by spite, ill will, and malice, as demonstrated, in part, by Defendants' repeated attempts, spanning more than ten (10) years, to force Plaintiffs to pay for Airstrip access."  (Doc. #1, ¶ 46.)

Neither party disputes that in July 1993 KAA demanded that Montgomery stop operating his aircraft storage business in the Industrial Park and warned him that it intended to deny his operation any further access to the Airstrip without an executed and approved agreement.   In his 1994 lawsuit Montgomery alleged that KAA denied him access, then permitted him access, but continued to cause him injury by asserting that it could regulate or restrict his access in the future. In the present lawsuit Montgomery alleges, "[t]he *repeated* attempts to eliminate Plaintiffs' right to unfettered and unrestricted access to the Airstrip have impaired, and will continue to impair, the value of the Property" and refers to KAA's "*repeated* attempts, *spanning more than ten (10) years*, to force Plaintiffs to pay for Airstrip access."  (Doc. #1, ¶¶ 28, 46 (emphasis added).)  Thus, there is no genuine dispute that in 1993 Montgomery knew KAA had asserted its right to restrict Montgomery's access to the Airstrip.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

        In support of its motion for partial summary judgment, KAA has submitted
an affidavit declaring that KAA's "longstanding management practice is to charge
Industrial Park property owners or tenants for 'through-the-fence' commercial
operations that involve provision of off-airfield aeronautical related services to the
public." (Doc. #9, Exh. A, ¶ 6.)  The affidavit also states that KAA has no
knowledge of certain entities being engaged in "'through-the-fence' commercial
operations that involve provision of off-airfield aeronautical related services to the
public." (*Id.* at ¶ 10.)  Further, the affidavit states that KAA never has charged
any Industrial Park owner or tenant, including Montgomery, for their "'through-the-
fence' commercial operations when such operations do not involve the provision
of off-airfield aeronautical related services to the public." (*Id.* at ¶ 12.)
Montgomery does not refute those assertions.

        Montgomery's affidavit states that after KAA installed a remote-controlled
electronic gate to limit access to the gate, Airport Manager Richard McDaniels
gave Montgomery "*a* remote control" to open the gate.  Montgomery does not
state that KAA gave his tenants additional remote controls to open the gate.  He
does not state whether he or his tenants were providing off-airfield aeronautical
related services to the public or what information he and his tenants provided to
KAA.  He does not submit any evidence from which the court may infer what KAA
knew about Montgomery's and his tenants' operations and what it knowingly
permitted.  Montgomery states only that he was unaware of any longstanding
management practice of KAA to charge Industrial Park owners or tenants to
access the Airstrip if those owners or tenants were operating off-airfield
aeronautical related services to the public.  Montgomery's assertion that he and
his tenants had unrestricted access to the Airstrip because Montgomery had a

remote control to operate the gate and did not know about KAA's management practice does not contradict KAA's assertion it had a longstanding management practice to charge owners and tenants to access the Airstrip if the operations conducted on the Industrial Park property provide off-airfield aeronautical related services to the public because Montgomery may have violated the management practice without KAA's knowledge.

Further, Montgomery's affidavit does not state that McDaniels told him that he and his tenants could access the Airstrip without charge even if they were providing off-airfield services to the public. Montgomery states only that McDaniels gave him a remote control, said KAA did not want to continue litigating, and did not require him to sign an agreement. Montgomery has produced no evidence showing that KAA wrongfully concealed its intent to enforce its management practice. *See Mohave Elec. Co-op, Inc. v. Byers*, 189 Ariz. at 310, 942 P.2d at 469.

Montgomery has produced no evidence—and does not allege or argue—that KAA made specific promises, threats, or inducements to persuade him not to file an action as required to apply the estoppel by inducement exception to the statute of limitations. *See Nolde v. Frankie*, 192 Ariz. at 280, 964 P.2d at 481. In fact, Montgomery contends that he already had filed an action before KAA began permitting him unrestricted and unfettered access to the Airstrip. Montgomery argues only that KAA's failure to restrict his access induced him to avoid the expense of filing a second lawsuit to establish the scope of his rights.

Moreover, because Montgomery's statements regarding his communications with McDaniels conflict with undisputed dates of court

proceedings and McDaniels' death certificate, the court is not required to accept the statements as true.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) ("Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial.")   Montgomery states that McDaniels contacted him "during the pendency" of the 1994 lawsuit and gave him the remote control for the gate "in 1995," thus giving him unrestricted access to the Airstrip.  (Doc. #13, Exh. A, ¶¶ 8, 12.)  Montgomery states that he no longer actively prosecuted the 1994 case because he had obtained the relief he sought.  (*Id.* at ¶ 10.)  But McDaniels died on April 17, 1994, and Montgomery verified his disclosure statement a few days later on April 19, 1994.  (Doc. #17, Exh. A.)  Montgomery still was actively litigating in September 1995.  (Doc. #13, Exh. A, ¶ 7.)  Montgomery still was attempting to settle the case in October 1996.  (Doc. #9, Exh. H.)  Montgomery's continued litigation after McDaniels' death implies that Montgomery did not obtain from McDaniels all the relief he sought.

Based on the evidence submitted regarding KAA's motion for partial summary judgment and the record as a whole, the court finds that by July 1993 Montgomery knew or had reason to know of his injury from which Counts One through Three arise—KAA's intent to enforce its management practice regulating access to the Airstrip—and Montgomery has not proved that KAA wrongfully concealed its intent to enforce its management practice until 2005.  Therefore, as a matter of law, the two-year statute of limitation applicable here bars Counts One through Three filed on December 8, 2006.[4]

---

[4]

Although the motion to dismiss was brought only by KAA, the reasoning for the dismissal of Counts One through Three applies to all of the defendants

1    Since the sole jurisdictional basis for this action is federal question

2  jurisdiction pursuant to 28 U.S.C. § 1331, and since the court is dismissing all of

3  the federal claims raised in the Verified Complaint, the Court *sua sponte*

4  concludes that it should decline to exercise supplemental jurisdiction over the

5  remaining state law claims in the Verified Complaint and will dismiss those claims

6  without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  *Fichman v. Media Center*,

7  512 F.3d 1157, 1162-63 (9th Cir. 2008) ("Having granted judgment on the federal

8  claims, the district court did not abuse its discretion in declining to exercise

9  supplemental jurisdiction over the state claims.")

10 **III.   Conclusion**

11    As a matter of law, the court finds that Counts One through Three of the

12 Verified Complaint, the sole federal claims, are barred because the two-year

13 limitation period applicable to those counts began to run in July 1993 and neither

14 equitable tolling nor estoppel by inducement excuses the plaintiffs from

15 compliance with the statute of limitations.[5]  The Court further finds that it should

16 decline to exercise supplemental jurisdiction over the remaining state law claims.

17 Therefore,

18    IT IS ORDERED that Defendant Kingman Airport Authority, Inc.'s Rule

19 56(D) [sic] Motion for Partial Summary Judgment on Counts 1 Thru 3 (Doc. #8) is

20 GRANTED and that Count One (Unconstitutional Taking), Count Two (Denial of

21 Due Process), and Count Three (Violation of Equal Protection) of the Verified

22 _____

named in those counts.

23    [5]

24    While KAA requested that oral argument be heard on its motion, the
court concludes that oral argument would not aid the decisional process since the
25 facts and legal contentions are adequately presented in the materials presented
to the court.
26

Complaint are dismissed with prejudice as time-barred.

IT IS FURTHER ORDERED that Count Four (Declaratory Judgment), Count Five (Breach of Contract), and [Count Six] (Promissory Estoppel) of the Verified Complaint are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike [Defendant Kingman Airport Authority, Inc.'s Supplement to Rule 56(d) Motion for Partial Summary Judgment on Counts 1 Thru 3] (Doc. #19) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment for the defendants accordingly.

DATED this 6th day of March, 2008.

Paul G. Rosenblatt
United States District Judge